# In the United States Court of Federal Claims

No. 09-456L

(Filed March 24, 2010)

```
*******************************
STACY SINGLETON, et al.,        *
                                *
            Plaintiff,          *
                                *
      v.                        *
                                *
THE UNITED STATES,              *
                                *
            Defendant.          *
                                *
*******************************
```

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Certify Class Action, filed December 23, 2009, in this "rails to trails" action seeking just compensation for the taking of private property for public use under the Fifth Amendment to the Constitution. First Am. Compl. ¶¶ 2, 36, 37. Defendant filed an opposition to Plaintiffs' motion on January 27, 2010, and Plaintiffs filed their reply on February 8, 2010.

In the underlying suit, Plaintiffs claim that they and the class which they seek to certify own fee simple title to lands along an approximately 29.55-mile right-of-way of the Missouri North Central Railroad, from milepost 218.25 near Norville, Missouri, to milepost 188.7 near Kelly, Missouri, in Livingston, Linn, and Chariton Counties. According to Plaintiffs, Motive Rail, Inc. d/b/a Missouri North Central Railroad ("Motive Rail") owned an easement for railroad purposes across Plaintiffs' property, but that it has ceased operations over the right-of-way and has otherwise abandoned its easement. Plaintiffs assert that, upon the railroad's abandonment of its easement, they regained the right to use and possess the property and are entitled to just compensation for the taking of the property for trail usage.

I.      Background

On February 5, 2007, Motive Rail filed a verified Notice of Exemption with the federal Surface Transportation Board ("STB") to discontinue service along the line of the railroad between the mileposts in question. The City of Chillicothe, Missouri, filed a request with the STB on February 8, 2007, for issuance of a notice of interim trail use ("NITU"), pursuant to § 8(d) of the National Trails System Act, 16 U.S.C. 1247(d) ("Trails Act"). The STB published its Notice of Exemption in the Federal Register on February 23, 2007. The NITU was issued by the STB effective January 28, 2008. On February 22, 2008, Motive Rail and the City of Chillicothe reached a Trail Use Agreement under which the railroad line was transferred to the City of Chillicothe for use as a public recreational trail subject to potential restoration for railroad

purposes.

In lieu of abandonment of its railroad line, a railroad may negotiate with a third party "to assume financial and managerial responsibility for the operation of the railroad right-of-way as a recreational trail" in a process called "railbanking." *Caldwell v. United States,* 391 F.3d 1226, 1229 (Fed. Cir. 2004) (citing *Preseault v. Interstate Commerce Comm'n*, 449 U.S. 1, 6-7 (1990). The issuance of the NITU by the STB allows the railroad to discontinue service without abandoning the easement. If the railroad and the third party reach a trail use agreement, abandonment of the right-of-way is postponed indefinitely. Thus, "Section 8(d) of the Trails Act effectively prevents the operation of state laws triggered by the abandonment of a property interest in land that would 'result in [the] extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." *Haggert v. United States*, 89 Fed. Cl. 523, 528 (2009) (citing *Caldwell*, 391 F.3d at 1229).

II.     Standards for Decision

The certification of a class in actions in the Court of Federal Claims is governed by Rule 23 of the Rules of the Court of Federal Claims (RCFC). RCFC 23 is based on the comparable rule of the Federal Rules of Civil Procedure but with a key distinction. Unlike the federal rule, RCFC 23 allows only for an "opt-in" class: if a class is certified, members of the class are notified and given an opportunity affirmatively to include themselves in the law suit. Only if they do so are they bound by the outcome of the action. "This approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff." *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992).

RCFC 23 provides that "one or more members of a class may sue as representative parties on behalf of all members only if" certain prerequisites are met. The prerequisites are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a). In addition, for the class action to be maintainable, the court must find that "the United States has acted or refused to act on grounds generally applicable to the class," that the common questions of law and fact predominate, and that the class action is superior to other methods for adjudicating the controversy. RCFC 23(b).

The test for class certification under RCFC 23 has been more succinctly described as comprising inquiry into the elements of numerosity, commonality, typicality, adequacy, and superiority. *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005). Furthermore, because "these requirements are in the conjunctive . . . a failure to satisfy any one of them is fatal to class certification." *Id.* In addition, as both parties acknowledge, "the party moving for class certification bears the burden to establish each of the required elements by a preponderance of the evidence." United States' Resp. in Opp'n to Pls.' Mot. to Certify Class Action ("Def.'s Opp'n") at 6; *Janssen v. United States*, __Fed. Cl.__, 2010 WL 697343 at *3 (February 24, 2010); *Haggert*, 889 Fed. Cl. at 530; *Fauvergue v. United States*, 86 Fed. Cl. 82, 96-97 (2009).

Despite the Plaintiffs' burden here to demonstrate the elements necessary for class

certification, this Court concurs with the observation in *Barnes* that the requirements of RCFC 23 should be liberally – "or, at least, not narrowly" – construed. *Barnes*, 68 Fed. Cl. at 502. Because the class action "is basically a procedural technique for resolving the claims of many individuals," *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1274 (Ct. Cl. 1972), a liberal construction serves public purposes of judicial economy and efficiency. "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties . . . and promote judicial efficiency.'" *Gunnells v. Healthplan Svcs.*, Inc., 348 F.3d 417, 424 (4th Cir. 2003) (citation omitted).

III.    Analysis

Plaintiffs propose a class comprised of

> All persons who own an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by Motive Rail, Inc. d/b/a Missouri North Central Railroad ("Motive Rail") in Livingston, Linn and Chariton Counties, Missouri, and who claim a taking of their rights to possession, control and enjoyment of such lands due to the operation of the railbanking provisions of the National Trails System Act ("NTSA"), 16 U.S.C § 1247(d). The segments of the subject right-of-way at issue are located between milepost 218.25 near Norville, Missouri, to milepost 188.7 near Kelly, Missouri, a distance of 29.55 miles in Livingston, Linn and Chariton Counties, Missouri. On January 15, 2008, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") pursuant to the NTSA and its implementing regulations.
>
> Excluded from this Class are the owners of land that abuts segments of the subject right-of-way to which the railroad acquired fee simple title; railroad companies and their successors in interest; persons who have filed, intervened, or choose to intervene or opt in to separate lawsuits against the United States for compensation for the same interests in land; and persons who are judges and justices of any court in which the action may be adjudicated or to which it may be appealed.

Pls.' Reply in Support of Mot. to Certify Class Action at 9 ("Pls. Reply").

A.   Numerosity

Based on their search of the records of the Tax Assessor and Recorder of Deeds in Livingston, Linn and Chariton Counties, Plaintiffs advise that there are over 190 individual parcels, owned by more than 135 individual or entities, along the right-of-way. Pls.' Mem. in Support of Mot. to Certify Class Action ("Pls.' Mem.") at 7-8. Plaintiffs additionally aver,

without further detail, that "potential claimants . . . are actually located in various states."  Pls.'s Reply at 7.

While Plaintiffs point to certain case precedent that suggests that a class of 40 members or more is presumed to satisfy the numerosity criterion for class certification, *see, e.g., King v. United States*, 84 Fed. Cl. 120, 124 (2008), this Court is more persuaded that there is no such presumption, certainly not in any binding case law.  As was recently emphasized in *Rasmuson v. United States*, "[t]here is no 'magic number' that once attained, triggers a presumption" of numerosity."  *Rasmuson*, __ Fed. Cl. __, 2010 WL 125972, at *12 (Jan. 8, 2010) (citing *Fauvergue*, 86 Fed. Cl. at 96).  Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. Equal Opportunity Comm'n*, 446 U.S. 318, 330 (1980).

In assessing numerosity, courts have weighed such factors as the number of class members, the location of the members of the class, the size of the individual claims, and the nature of the action.  *King*, 84 Fed. Cl. at 123-24.  Here, the claim is that there are more than 135 individual owners, located in "various" states, involving many agricultural and other small parcels of land the value of which would be small compared to the cost of bringing actions individually.  Plaintiffs argue, "It is frankly impracticable to suggest or infer that Plaintiffs can realistically and effectively add over 100 plaintiffs to this lawsuit reasonably through the joinder process."  Pls.' Reply at 7.  Defendant concedes that the number of potential class members, while not outcome-determinative, is "a major consideration" when evaluating whether joinder is impracticable.  *Fauvergue*, 86 Fed. Cl. at 96; Def.'s Opp'n at 7-8.

Defendant, however, responds that Plaintiffs have not documented the size of the potential class and that their estimated number is mere speculation, that the rules of the court allow for liberal joinder of parties, that other rails to trails class actions of more than 100 plaintiffs are proceeding without class certification, that the small geographic area of the railroad line in question counsels against a finding of numerosity, and that Plaintiffs' success in enlisting the existing listed plaintiffs is itself evidence that joinder is not impracticable.

"[I]mpracticable" does not mean "impossible," *Barnes*, 68 Fed. Cl. at 495, but the term is somewhat malleable.  As the court in *Rasmuson* observed, "impracticable" is defined as "*impossible in practice* to do or carry out," (citing *The New Oxford American Dictionary* 849 (2d ed. 2005) (alteration in original) and "incapable of being performed or accomplished or accomplished by the means employed or at command," (citing *Merriam-Webster's Collegiate Dictionary* 625 (11th ed. 2003).  *Rasmuson*, 2010 WL 125972 at *11.  By these definitions, given Plaintiffs' search of the land records ("Plaintiffs have specifically mapped the abandoned right-of-way in all three counties and have identified the individuals owning parcels along the right-of-way."  Pls.' Reply at 6), it would not appear that joinder is "incapable of being performed" or "carr[ied] out."  By contrast, however, the term "impracticability" (a cognate of "impracticable") is explained in *Black's Law Dictionary*, in the context of a contractual duty, as involving elements of difficulty or expense, rather than mere capability ("For performance of a duty to be truly impracticable, the duty must become much more difficult or much more expensive to perform . . .").  *Black's Law Dictionary* 772 (8th ed. 2004).

Plaintiffs aver that they searched the land records in the three counties, mapped the abandoned right-of-way in all three counties, and identified the individual owners of parcels along the right-of-way. Corroborative of those actions, Plaintiffs aver, without contradiction by Defendant, that they have given Defendant actual parcel numbers for all named Plaintiffs. Defendant acknowledges that Plaintiffs are not obligated to specify an exact number of potential class members, but emphasizes that they "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Unlike the prospective class of automobile theft and vandalism insurance claimants in *Marcial* allegedly denied indemnity due to failure to take or to pass polygraph tests, the factual context of a rails to trails action is much more straightforward regarding the number of landowners along the right-of-way. The Court finds that Plaintiffs' estimate of the size of the potential class is more than merely speculative. On that basis, the Court further finds that joinder of the estimated 135 potential claimants would entail a sufficient degree of extra difficulty and/or expense that makes it "impracticable." Plaintiffs have demonstrated the element of numerosity.

### B.  Commonality

Commonality is a three-part test. RCFC 23(a)(2) requires that there be questions of law or fact common to the class; RCFC 23(b)(2) requires that the United States has acted or refused to act on grounds generally applicable to the class; and RCFC 23(b)(3) requires that the questions of law and fact common to class members predominate over questions particular to individual class members. *Fauvergue*, 86 Fed. Cl. at 98-99. Defendant concedes that the threshold to establish commonality is "not high." Def.'s Response at 11; *Fauvergue*, 86 Fed. Cl. at 98-99; *Janssen*, 2010 WL 697343 at *4.

The test of a common question of law or fact is met "when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fisher v. United States*, 69 Fed. Cl. 193, 200 (2006). Here, the legal question common to all class members is whether the NITU effectuated a Fifth Amendment taking by blocking the landowners' reversionary interest in their land. *See Janssen*, 2010 WL 697343 at *4; *Fauvergue*, 86 Fed. Cl. at 99. As the Federal Circuit noted in *Caldwell*, "The issuance of the NITU is the only government action in the railbanking process . . . ." 391 F.3d at 1233. The issuance of the NITU also substantiates that the United States has acted on grounds generally applicable to the class.

The issue of predominance is the most "demanding" of the commonality three-part test and is designed to determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). While there may be individualized issues as to damages if the court ultimately finds liability for a taking, the determination of such damages on a plaintiff by plaintiff basis does not preclude class certification. *Haggart*, 89 Fed. Cl. at 533. "Factual variation among the class grievances is acceptable as long as a common nucleus of operative fact exists." *King*, 84 Fed. Cl. at 126. Plaintiffs argue that "Missouri law provides that [the railroad easements] were extinguished when operation of the railroad over the property was abandoned," Pls.' Mem. at 11-12, citing *Moore v. Missouri Friends of the Wabash Trace Nature Trail, Inc.*, 991 S.W.2d 681, 687 (Mo.

App. 1999).  On that basis, an essential inquiry would be the nature of the right-of-way obtained in the first instance by the railroad's predecessor in interest.  The remaining legal issue is the overarching issue in this case: whether the government took plaintiffs' property rights when the "railroad right-of-way [was] converted to interim trail use under the Trails Act."  *Caldwell*, 391 F.3d at 1233.  Plaintiffs have therefore also met the test of commonality.

      C.  Typicality

      Plaintiffs must also show that their claims are typical of the claims of the proposed class.  "Even if some factual differences exist between the claims of the named representatives, plaintiffs can successfully establish typicality by showing that the named representatives' claims share the same essential characteristics as the claims of the class at large."  *Fauvergue*, 86 Fed. Cl. at 100.  Again, the threshold is not high.  *Id.*  "[T]he analysis of commonality and typicality tends to merge."  *Barnes*, 68 Fed. Cl. at 498.  The court in *Fauvergue*, also a rails to trails case, found typicality based on the essential characteristics of the class: "all plaintiffs' claims in the proposed class arose under the Trails Act when the same NITU was issued."  86 Fed. Cl. at 100.  Here, Plaintiffs aver that "each of the named Plaintiffs and proposed class members own fee simple title to lands along the right-of-way in Livingston, Linn and Chariton Counties, Missouri."  Pls.' Mem. at 12.

      Defendant points out, however, that Plaintiffs have not submitted any actual evidence to meet their evidentiary burden and so, therefore, the Court has no basis upon which to find that the named Plaintiffs' interests are typical of the class as a whole.  First, Defendant argues that "original source deeds," which Plaintiffs have produced to the United States to show Motive Rail's interest in the railroad corridor, do not shed any light on whether Motive Rail acquired the same rights over each potential plaintiff's underlying property or even whether the same conveyance or type of conveyance was used to acquire those rights.  Def.'s Resp. at 11-12.  The Court does not find this objection convincing because the nature of Motive Rail's interest in the right-of-way is more of an ultimate issue in this litigation and less indicative of whether the named Plaintiffs' claims are typical of the class.  Second, more importantly to the Court, Defendant notes that, based on Plaintiffs' unopposed voluntary dismissal of certain originally named plaintiffs, "Plaintiffs have not presented any evidence that any named Plaintiff remaining in the lawsuit nor any potential class member owns property in any of the three counties through which the railroad corridor that is the subject of this lawsuit extends."  *Id.* n.4.

      In reply, Plaintiffs emphasize that their "claims in this lawsuit are not just typical and common with other potential claimants, they are identical."  The Plaintiffs' claims stem from their proposed definition of the class as one that "consists of all persons who own an interest in the land adjacent to the abandoned railroad corridor at the time the NITU was issued who may have a claim for the taking of their property."  Pls.' Reply at 9.  They argue that Defendant's attempt to narrow the class definition with respect to the railroad's acquisition of land by the same method or conveyance improperly conflates the merits of the underlying litigation with the requirements of class certification.  *Id.*

      The Court recognizes the relative paucity of Plaintiffs' evidentiary production at this point in the litigation, with only the Plaintiffs' First Amended Complaint and the briefing on

their class certification motion on record.  Nevertheless, the focus of the typicality requirement is on the claims of the representatives and that of the class.  "The question is whether the *claims* are typical."  *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 239 F.R.D. 9, 28 (D.D.C. 2006).  Courts have often found typicality "if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory."  7A Charles AlanWright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure*, § 1764 (3d ed. 2005) (footnotes omitted).  "Defining the point at which claims are sufficiently related to satisfy" typicality "perhaps may best be approached by considering class-certification decisions in specific areas to determine where the courts appear to draw those lines."  *Id.*

As in *Fauvergue* and other rails to trails cases, this Court finds that Plaintiffs have shown typicality.  Their claims and that of the class they propose stem from a single event, the issuance of the NITU, and are based on the same legal theory.

D.  Adequacy

The requirement that "the representative parties will fairly and adequately protect the interests of the class," RCFC 23(a)(4), has been held to encompass two components: adequacy of counsel as well as lack of conflict between the interests of named plaintiffs and the proposed class members. *Curry v. United States,* 81 Fed. Cl. 328, 336 (2008).  As to the latter component, it is evident that the inquiry overlaps with much of the review already undertaken above.

> The adequacy-of-representation requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Amchem*, 521 U.S. at 627, n.20 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).  In its opposition to Plaintiffs' motion for class certification, Defendant does not interpose any objection to a finding of adequacy of representation.

In its submission, Plaintiffs provide extensive information, not surprisingly, on the professional background of their counsel and their experience representing property owners in Trails Act takings cases.  The Court is satisfied that the firm of Baker Sterchi Cowen & Rice, L.L.C., and its attorneys dedicated to this action, Mr. Brent Baldwin, Mr. Thomas S. Stewart, Mr. Steven M. Wald, Mr. J. Robert Sears, and Ms. Elizabeth McCulley, are "qualified, experienced, and generally able to conduct the proposed litigation."  *Quinault*, 453 F.2d at 1276.  Similarly, the Court finds no indication of any conflicting, competing, or antagonistic interests as between the named Plaintiffs and the proposed class.  *See, e.g., Haggart*, 89 Fed. Cl. at 535 (interests aligned because "all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same governmental" action, the issuance of the NITU).

E.  Superiority

The superiority requirement "encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action." *Fauvergue*, 86 Fed. Cl. at 101.  The court essentially conducts a cost-benefit analysis, "weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed. Cl. at 499.  Plaintiffs point to the economies of time, effort, and expense to be achieved by litigating the basic legal issue – "whether the STB's issuance of the NITU constituted a taking in contravention of the Fifth Amendment" – in one action.  Pls.' Mem. at 15.  They posit little difficulty in the court's management of the class action because members must affirmatively opt into the class and they advise that notice to prospective class members would be relatively easy because all class members are situated along the same right-of-way in the three counties.  There would be efficiencies as well in common title research, property appraisals, and experts.

Defendant notes that any such efficiencies could still be accomplished without class certification, via joinder of plaintiffs in one action or in the consolidation of separately filed suits (inasmuch as the court's rules require notice of directly and indirectly related cases).  Defendant also argues that individual inquiries would be required regardless of class certification, diminishing the extent of the efficiencies Plaintiffs claim, on such issues as each member's standing (whether the class member owned property on the date of the claimed taking), the nature of the member's property interest, and the nature of the railroad's interest in the corridor adjacent to a given class member's property.  Finally, citing three pending cases, Defendant argues that "numerous rails-to-trails cases of comparable size are proceeding in this Court without class certification."  Def.'s Resp. at 15.

The Court finds that resolution of the predominant legal issue in one action is superior for fairly and efficiently adjudicating this case.  "All plaintiffs are affected by the same [NITU], the defenses the government will likely use in response to plaintiffs' claims should be identical, and the law which the court will apply to resolve plaintiffs' claims should also be identical." *Haggart*, 889 Fed. Cl. at 535.

Plaintiffs' motion for certification of the class is GRANTED.

IV.    Certification

Pursuant to RCFC 23(b)(1)(B), the court must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."

A.  Definition of the Class

With certain modifications as noted below, the Court adopts the definition of the class as proposed by the named Plaintiffs.  This Court concurs with similar modifications adopted by the courts in *Haggart*, 89 Fed. Cl. at 536, and *Janssen*, 2010 WL 697343 at *7, that the proposed exclusion of "persons who have filed, intervened, or choose to intervene or opt in to separate lawsuits against the United States for compensation for the same interests in land" is

unnecessary.  Class members with claims for the same interests pending in other actions will not be allowed to opt in to this action.  Similarly, the Court finds it unnecessary to include the exclusion of persons who are judges of courts in which this action may be adjudicated or to which it may be appealed.  There is no indication or likelihood that any such judges are potential class members and any such eventuality may be addressed at the time.

The class therefore is certified as:

> All persons or entities (1) who own an interest in lands constituting part of the railroad corridor or right-of-way, between milepost 218.25 near Norville, Missouri, to milepost 188.7 near Kelly, Missouri, on which a rail line was formerly operated by Motive Rail, Inc. d/b/a Missouri North Central Railroad ("Motive Rail") in Livingston, Linn and Chariton Counties, Missouri; (2) claim a taking of their rights to possession, control and enjoyment of such lands due to the operation of the railbanking provisions of the National Trails System Act ("NTSA"), 16 U.S.C § 1247(d) when, on January 15, 2008, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") pursuant to the NTSA and its implementing regulations; and (3) who affirmatively opt into this lawsuit in accordance with the procedures to be established by this Court; but (4) excluding the owners of land that abuts segments of the subject right-of-way to which the railroad acquired fee simple title and railroad companies and their successors in interest.

### B.  Class Claims and Issues

The primary claim of the class is whether the STB's issuance of the NITU on January 15, 2008, constituted a taking of plaintiffs' property in violation of the Fifth Amendment, requiring the United States to pay just compensation.  Sub-issues include whether the class members owned compensable property interests in the specified segments of the right-of-way on the date of the NITU; the nature of Motive Rail's interest in the railroad line compared to any interest retained by the original grantors; and, if a taking did occur, the amount of just compensation.

### C.  Appointment of Class Counsel

Mr. Thomas S. Stewart of the firm of Baker Sterchi Cowden & Rice, L.L.C., is appointed counsel of record for the class.  The other attorneys identified in Plaintiffs' motion for class certification, to the extent of their participation in this litigation, shall be designated "of counsel" in subsequent filings with the court.

### D.  Provision Regarding Attorneys' Fees

Pursuant to RCFC 23(g)(1)(C), Plaintiffs' counsel shall file, on or before April 16, 2010, a status report describing the record-keeping procedures regarding attorneys' fees and other expenses in this litigation and the terms of any existing agreements with plaintiffs regarding the

same.

V.      Conclusion

On or before April 23, the parties shall file a joint status report proposing a scheduling order relating to notification and enrollment of the class.  *See Janssen*, 2010 WL 697343 at *8.


 s/ Edward J. Damich
EDWARD J. DAMICH
Judge